## IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA
## (PHILADELPHIA)

| | | |
|---|---|---|
| IN RE: | ) | |
| **RHODIE D FOWLER,** | ) | **CASE NO.: 25-14536-DJB** |
| | ) | **CHAPTER 13** |
| DEBTOR. | ) | **JUDGE DEREK J BAKER** |
| | ) | |
| **U.S. BANK NATIONAL ASSOCIATION, NOT** | ) | |
| **IN ITS INDIVIDUAL CAPACITY BUT SOLELY** | ) | |
| **AS TRUSTEE OF THE NRZ PASS-THROUGH** | ) | |
| **TRUST XI,** | ) | |
| | ) | |
| CREDITOR. | ) | |
| | ) | |
| **RHODIE D FOWLER, DEBTOR,** | ) | |
| **LARRY D. FOWLER, CO-DEBTOR** | ) | |
| **AND KENNETH E. WEST, TRUSTEE,** | ) | |
| | ) | |
| RESPONDENTS. | ) | |

### MOTION OF U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE OF THE NRZ PASS-THROUGH TRUST XI FOR RELIEF FROM AUTOMATIC STAY UNDER § 362 AND CO-DEBTOR STAY UNDER § 1301

1. Movant is U.S. Bank National Association, not in its individual capacity but solely as Trustee of the NRZ Pass-Through Trust XI.

2. Debtor is the owner of the property described as 1818 Fillmore Street, City of Philadelphia, Pennsylvania 19124 (hereinafter the "Property").

3. Movant is the holder of a Mortgage, with an original principal amount of $32,300.00 on the mortgaged premises, that was executed on October 19, 2000. Said mortgage was recorded on November 20, 2000, as Instrument No. 50173868. Documentation provided is in support of right to seek a lift of stay and foreclose if necessary.

4. Kenneth E. West is the Trustee appointed by the Court.

5.  As of January 29, 2026, Debtor has failed to make the monthly payments for the months of November 17, 2025 through January 17, 2026, in the amount of $572.36 each, for a total arrearage of $1,717.08.

6.  As of January 29, 2026, the principal balance is $59,864.43, the deferred principal balance is $527.10 and there is a total payoff amount of $61,625.28.

7.  Debtor's proposed Amended Plan dated January 19, 2026 accounts for payments to be paid direct to Movant by Debtor.

8.  In addition to the other amounts due to Movant reflected in this Motion, as of the date hereof, in connection with seeking the relief requested in this Motion, Movant will be incurring $1,350.00 in legal fees and $199.00 in costs. Movant reserves all rights to seek an award or allowance of such fees and expenses in accordance with applicable loan documents and related agreements, the Bankruptcy Code and otherwise applicable law.

9.  Movant is entitled to relief from stay for cause.

10. Movant seeks relief from the "Co-Debtor Stay" as it may apply to the Co-Debtor on the Mortgage, Larry D. Fowler.  Given the foregoing, it is clear that unless the Co-Debtor stay is lifted, Movant's interest in the Property may be adversely impacted.

11. Movant further seeks relief in order to, at its option, offer, provide and enter into any potential forbearance agreement, loan modification, refinance agreement or other loan workout/loss mitigation agreement. Movant may contact Debtor via telephone or written correspondence to offer such an agreement. Any such agreement shall be non-recourse unless included in a reaffirmation agreement.

12. This motion and the averments contained therein do not constitute a waiver by Movant of its right to seek reimbursement of any amounts not included in this

motion, including fees and costs, due under the terms of the mortgage and applicable law.

13. NewRez LLC services the underlying mortgage loan and note for the property referenced in this motion for Movant. In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant. Movant, directly or through an agent, has possession of the Note.  The Note is endorsed in blank.  Movant is the beneficiary or the assignee of the Deed of Trust.

WHEREFORE, Movant prays that an Order be entered modifying the Stay and permitting Movant to proceed with its mortgage foreclosure on the mortgaged premises, and to allow the Sheriff's Grantee to take any legal action to enforce its right to possession of the mortgage premises. Further, Movant prays that an Order be entered awarding Movant the costs of this suit, reasonable attorney's fees in accordance with the mortgage document and current law together with interest.

Dated: <u>February 20, 2026</u>

Respectfully Submitted,

<u>/s/ Joshua I. Goldman</u>
Joshua I. Goldman, Esq.
Pennsylvania Bar # 205047
PADGETT LAW GROUP
6267 Old Water Oak Road, Suite 203
Tallahassee, FL 32312
(850) 422-2520 (telephone)
(850) 422-2567 (facsimile)
josh.goldman@padgettlawgroup.com
*Counsel for Movant*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished to the parties on the attached Service List by electronic notice and/or by First Class U.S. Mail on this 20th day of February 2026.

*VIA U.S. MAIL*

*DEBTOR*
RHODIE D FOWLER
983 ALLENGROVE STREET
PHILADELPHIA, PA 19124

*CO-DEBTOR*
LARRY D. FOWLER
1818 FILLMORE STREET
PHILADELPHIA, PENNSYLVANIA 19124

*VIA ELECTRONIC NOTICE*

*ATTORNEYS FOR DEBTOR*
BRAD J. SADEK
SADEK LAW OFFICES, LLC
1500 JFK BOULEVARD
STE 220
PHILADELPHIA, PA 19102
BRAD@SADEKLAW.COM

*TRUSTEE*
KENNETH E. WEST
OFFICE OF THE CHAPTER 13 STANDING TRUSTEE
190 N. INDEPENDENCE MALL WEST
SUITE 701
PHILADELPHIA, PA 19106
ECFEMAILS@PH13TRUSTEE.COM

*U.S. TRUSTEE*
UNITED STATES TRUSTEE
OFFICE OF UNITED STATES TRUSTEE
ROBERT N.C. NIX FEDERAL BUILDING
900 MARKET STREET, SUITE 320
PHILADELPHIA, PA 19107
USTPREGION03.PH.ECF@USDOJ.GOV

/s/ Joshua I. Goldman
Joshua I. Goldman, Esq
Pennsylvania Bar # 205047
PADGETT LAW GROUP
6267 Old Water Oak Road, Suite 203
Tallahassee, FL 32312
(850) 422-2520 (telephone)
Josh.goldman@padgettlawgroup.com
*Counsel for Movant*

CHAMPION MORTGAGE CO., INC. 20 WATERVIEW BOULEVARD, PARSIPPANY, NEW JERSEY 07054

| File# | Cust# |
|---|---|
|  |  |

## PENNSYLVANIA ADJUSTABLE RATE PAYMENT MORTGAGE NOTE - FIRST LIEN
### (1 Year Treasury Index -- Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

OCTOBER 19, 2000                                                    PHILADELPHIA, PENNSYLVANIA

1818 FILLMORE STREET, CITY OF PHILADELPHIA, PENNSYLVANIA

**1.      BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $32,300.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is **Champion Mortgage Co., Inc.** I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

**2.      INTEREST**

I agree to pay interest at an initial rate of 11.125% per year computed on the basis that a year consists of 12 months, each containing 30 days. Interest will be charged on the unpaid principal until the full amount of the principal is repaid. The interest rate I will pay will change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and by Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.      PAYMENTS**

**(A)      Time and Place of Payments**

I will pay principal and interest by making payments every month.

I will make my monthly payments on the 24th day of each month beginning on NOVEMBER 24, 2000. I will make these payments every month until OCTOBER 24, 2030, on which date I will pay in full all the remaining principal and all accrued interest and any other charges that I may owe under this Note or any mortgage securing this Note.

Each regularly scheduled payment I make will be applied first to accrued and unpaid interest, then to the outstanding principal balance and then to any other charges due under this Note or under any mortgage securing this Note. I understand and agree that interest will accrue, be computed and be collected for the period from one scheduled payment due date to the next, on the assumption that each such payment period consists of 30 days, regardless of the date on which my payment is actually received. I understand that if you receive a payment after its due date and any applicable grace period, I will owe a late charge under paragraph 7(A) of this Note.

I will make my monthly payments at **20 Waterview Boulevard, Parsippany, NJ 07054-1267** or at a different place if required by the Note Holder.

**(B)      Amount of my Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $310.66. This amount may change.

**(C)      Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**

    **(A)    Change Dates**

        The interest rate I will pay may change on the 24th day of OCTOBER , 2001, and on that day every 12th month thereafter.  Each date on which my interest rate could change is called a "Change Date".

    **(B)    The Index**

        Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of 1 year, as made available by the Federal Reserve Board.  The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index".

        If the Index is no longer available, the Note Holder will choose a new index, which is based upon comparable information.  The Note Holder will give me notice of this choice.

    **(C)    Calculation of Changes**

        Before each Change Date, the Note Holder will calculate my interest rate by adding SIX AND 1/10 percentage points (6.100%) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

        The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments.   The result of this calculation will be the new amount of my monthly payment.

    **(D)    Limits on Interest Rate Changes**

        The interest rate I am required to pay at the first Change Date will not be greater than 13.125% or less than 11.125%.  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage (2%) points from the rate of interest I have been paying for the preceding twelve months.  My interest rate will never be greater than 17.125% ("lifetime cap"), and will never be lower than 11.125% ("floor"), during the term of this loan.

    **(E)    Effective Date of Changes**

        My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

    **(F)    Notice of Changes**

        The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.    MY RIGHT TO MAKE PREPAYMENTS**

    **(a)**    I have the right to make extra or additional payments of principal under this Note at any time, subject to the provisions of Section 5(c).  An extra or additional payment of principal is known as a "prepayment".  When I make a "prepayment", I will tell the Note Holder in writing that I am doing so.

    **(b)**    I agree that the Note Holder will apply any prepayment to reduce the principal.  If I make a prepayment of less than the outstanding principal balance plus accrued interest and other charges due, there will be no changes in the amounts of, or changes or delays in the due dates of, my scheduled monthly payments unless the Note Holder agrees in writing to such changes.

    **(c)**    If I repay the original Principal amount of this loan prior to the NOT APPLICABLE anniversary of the Note, I agree to pay a PREPAYMENT PENALTY equal to 0.00% of the original principal loan amount.

**6.    LOAN CHARGES**

    If a law or regulation which applies to this loan is finally interpreted so that the interest, any other charges, the method of calculating any interest or other charges, or any other provision of this Note exceed permitted limits or conflict with the requirements of such law or regulation, then any such interest or charge shall be limited to that permitted any sums already collected which exceed such limits shall be refunded to me.  To that end, I agree that the provisions of this Note are severable and all provisions in this Note not in conflict with any such interpretation, law or regulation shall remain in full force and effect.  Any refund hereunder, at Note Holder's option, may be made by a credit to the principal balance or by direct payment to me.

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)    Late Charge for Overdue Payment**

If the Note Holder has not received the full amount of any of my monthly payments by the end of ten (10) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be five percent (5%) of the unpaid portion of my overdue payment. I will pay this late charge only once on any late payment.

**(B)    Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

I will also be in default if I fail to keep any of my promises made in my mortgage executed this date in favor of Lender.

**(C)    Notice of Default**

If I am in default and the original principal amount of this Note is greater than $50,000, the Note Holder may require me to immediately pay the unpaid principal balance of this Note and all interest that I owe on that amount and all other outstanding charges. However, if the original principal amount of this Note is $50,000 or less, and I am in default, the Note Holder will send me a written notice telling me that If I do not pay the past due amount plus permitted costs and expenses by a certain date the Note Holder may require me to pay immediately the unpaid principal balance of this Note plus all interest that I owe on that amount and all other outstanding charges. That date must be at least 30 days after the date the notice is mailed to me or 30 days after the notice is otherwise delivered to me.

**(D)    No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)    Payment of Note Holder's Costs and Expenses**

If I default, whether or not the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for its bona fide costs and reasonable costs and expenses paid to third parties as provided in the Mortgage, but only to the extent not prohibited by applicable law.

**(F)    Dishonored Check Charge**

I will pay a dishonored check fee of $15.00 to the Note Holder for each check or other instrument, or payment order, given in payment under this Note which is returned to the Note Holder unpaid.

**8.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person, who takes over these obligations, including the obligation of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.    BORROWER'S WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment, notice of dishonor and protest. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor," means the right to require the Note Holder to give notice to other persons that amounts due have not been paid. "Protest" means the right to require the Note Holder to obtain official certification of nonpayment.

**11.    NOTICE TO BORROWER: THIS DOCUMENT CONTAINS PROVISIONS FOR A VARIABLE INTEREST RATE.**

12.   **STATE AND FEDERAL LAW**

This Note is made pursuant to the federal Alternative Mortgage Transaction Parity Act of 1982 (12 U.S.C. Section 3801 et seq.) and applicable regulations.  Otherwise, to the extent not preempted by such act or regulations or other federal law, Pennsylvania law governs this Note.  In the event of a conflict between any provision of this Note and any federal or Pennsylvania statute, law or regulation in effect as of the date of this Note, the statute, law or regulation shall control to the extent of such conflict and the conflicting provision contained in this Note shall be without effect.  All other provisions of this Note will remain fully effective and enforceable.

13.   **THIS NOTE SECURED BY A MORTGAGE**

In addition to the protection given to the Note Holder under this Note, a Mortgage, dated the date of this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That mortgage describes how and under what additional conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

**WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.**

*Larry D. Fowler*
LARRY D. FOWLER

*Rhodie D. Fowler*
RHODIE D. FOWLER

Witness: _____

PAY TO THE ORDER OF _____
WITHOUT RECOURSE
BY CHAMPION MORTGAGE CO. INC.
ELIZABETH D. PERRITT
ASST TREASURER

CHAMPION MORTGAGE CO., INC., 20 WATERVIEW BOULEVARD, PARSIPPANY, NEW JERSEY 07054

| File# | Cust# |
|-------|-------|
|       |       |

## MULTISTATE ADJUSTABLE RATE RIDER TO MORTGAGE NOTE - FIRST LIEN

**Date of Note:** OCTOBER 19, 2000

**Borrower(s) Name(s):**
LARRY D. FOWLER
RHODIE D. FOWLER

**Secured Property Address:**
1818 FILLMORE STREET
CITY OF PHILADELPHIA, PENNSYLVANIA

**Loan Amount:** $32,300.00

In the event Lender has not received (at the previously designated funding location or the Lender's corporate headquarters) and approved all of the documents and/or information which it requires to fund the above mentioned loan on OCTOBER 24, 2000, then this loan may be cancelled or funded at a later date, at the sole option of the Lender.  If the Lender chooses to fund this loan at a date subsequent to OCTOBER 24, 2000 then, regardless of what appears elsewhere in the loan documents, the first payment will be due one month after the loan is funded.  Future payments will be due on the same day of each month as the first payment.  Interest will be charged to the Applicant(s) beginning on the date money is disbursed by the Lender.  The maturity date will be extended and will be 360 months from the date of funding the loan.

All other terms, as evidenced in the Mortgage Note, Security Instrument and other loan documents, remain the same.

## ACKNOWLEDGEMENT

I/We the applicant(s) have read and understand the contents of this Rider to the Mortgage Note - First Lien and agree to its terms and conditions by signing and dating below.

_____
LARRY D. FOWLER

_____
RHODIE D. FOWLER

Witness: _____

## City of Philadelphia Department of Records

### RECORDING INFORMATION SUMMARY (RIS)

| | |
|---|---|
| The information provided by you will be relied upon by the Department of Records for examination and indexing purposes. If there is any conflict between the RIS and the attached document, the information on the RIS shall prevail for examination and indexing purposes. | **RETURN DOCUMENT TO:**<br>Name: **Professional Abstract & Assurance Corp.**<br>Address: **4600 STREET ROAD**<br>**TREVOSE PA 19053**<br><br>Telephone: **Telephone: 215-355-0115 Fax: 215-355-8362** |

**1. Type of Document:**

| | | | |
|---|---|---|---|
| ☐ Deed | ☒ Mortgage | ☐ Lease/Memorandum of Lease |
| ☐ Sheriff's Deed | ☐ Release of Mortgage | ☐ Assignment of Lease & Rent |
| ☐ Deed of Condemnation | ☐ Assignment of Mortgage | ☐ Easement |
| ☐ Other Deed | ☐ Satisfaction of Mortgage | ☐ Other: _____ |
| | | (specify) |

**2. Date of Document:** __10__ / __19__ / __00__
month / day / year

**3.** Grantor/Mortgagor/Assignor/Lessor/ Other:    (a.)   **FOWLER, LARRY D.**
*(Last Name, First Name, Middle Initial)*    (b.)   **FOWLER, RHODIE D.**
☐ Additional names on **Continuation Page** of RIS.

**4.** Grantee/Mortgagee/Assignee/Lessee/ Other:    (a.)   **CHAMPION MORTGAGE CO. INC.**
*(Last Name, First Name, Middle Initial)*    (b.)   _____
☐ Additional names on **Continuation Page** of RIS.

**5.** Property Address:

(a.)   House No. & Street Name:   **1818 FILLMORE STREET**
Condo Name (if applicable): _____ Unit # _____ Philadelphia, PA   Zip Code: __19124__
BRT Account # (optional): _____ Parcel Identification Number (PIN) (optional): ████████
☐ Additional addresses on **Continuation Page** of RIS.

**6.** Grantee's Mailing Address (Deeds only):
(If Grantee is at a different address than the Property Address listed in Section 5, complete this section.)
Grantee or Designee Name: _____
House No. & Street Name: _____
City: _____ State: _____ Zip Code: _____

**7.** Recording Information to be Referenced. Mortgage to be released/satisfied/assigned/modified:
                                    Recorder's Index Information
(a.) Name of Original Mortgagee: _____   of Original Mortgage:
Recording Date of Original Mortgage: _____ / _____ / _____
                 month / day / year    Initials, Book and Page **or** Doc. ID#
☐ Additional references on **Continuation Page** of RIS.

**8. Optional Information:**    ☐ Consolidation    ☐ Subdivision

| | |
|---|---|
| **ANNETTE MC WILLIAMS**<br>Preparer Name<br><br>*?*<br>Preparer Telephone Number<br><br>Preparer Signature | ████████ **50173868**<br>**Pg: 1 of 12**<br>11/20/2000 04:30PM<br><br>This Document Recorded<br>11/20/2000<br>04:30PM    Doc Id: 50173868<br>Doc Code: M   Receipt ████████<br>     Rec Fee: 43.50<br>Commissioner of Records, City of Philadelphia |

PROFESSIONAL ABSTRACT &
ASSURANCE CORP.
4600 STREET RD.
TREVOSE, PA 19053

_____ [Space Above This Line for Recording Data] _____

| File# | Cust# |
|-------|-------|
|       |       |

# PENNSYLVANIA ADJUSTABLE RATE PAYMENT MORTGAGE - FIRST LIEN

**THIS MORTGAGE** ("Security Instrument") is given on OCTOBER 19, 2000. The mortgagor is LARRY D. FOWLER MARRIED, RHODIE D. FOWLER HIS WIFE ("Borrower"), whose address is 1818 FILLMORE STREET, PHILADELPHIA, PENNSYLVANIA 19124. This Security Instrument is given to **Champion Mortgage Co., Inc.,** ("Lender") which is organized and existing under the laws of New Jersey, and whose address is **20 Waterview Boulevard, Parsippany, New Jersey 07054-1267.** Borrower owes Lender the principal sum of THIRTY TWO THOUSAND THREE HUNDRED AND 00/100 Dollars (U.S. $32,300.00). This debt is evidenced by the Borrower's Note ("Note") dated the same date as this Security Instrument, which provides for monthly payments, with the full debt, if not paid earlier, due and payable on OCTOBER 24, 2030. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, the following described property located in PHILADELPHIA County, Commonwealth of Pennsylvania:

## - See Schedule A Attached Hereto and Made a Part Hereof -

Tax Parcel ▮▮▮▮▮▮▮▮

which has the address of 1818 FILLMORE STREET, CITY OF PHILADELPHIA, PENNSYLVANIA ("Property Address");

**TOGETHER WITH** all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property".

**BORROWER COVENANTS** that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

50173868
Pg: 2 of 12
11/20/2000 04:30PM

Borrower and Lender covenant and agree as follows:

## 1.    Payment of Principal and Interest.

Borrower shall promptly pay when due the principal and interest on the debt evidenced by the Note and any other charges as due under the Note.

## 2.    Funds For Taxes and Insurance.

Subject to applicable law, upon written notice from Lender requiring that Borrower escrow funds for the payments of taxes and insurance, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items". Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S. C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays to Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the loan evidenced by the Note, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds.

Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument. If the Funds held by Lender exceed the amounts permitted to be held under applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion. Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 19, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

50173868
Pg: 3 of 12
11/20/2000 04:30PM

3.      **Application of Payments.**

Lender will apply payments received under Paragraph 1 in accordance with the terms of the Note.

4.      **Charges; Liens.**

Borrower shall pay or cause to be paid, when due, all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests In good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien, which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.

5.      **Hazard or Property Insurance.**

Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender or applicable law requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender, or applicable law requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's Security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within thirty (30) days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds.

50173868
Pg: 4 of 12
11/20/2000 04:30PM

Lender may use the proceeds received by Lender to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given. Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 19 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6.      **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.**

Unless Borrower's loan application and the Lender's loan approval provided that the Property was not required to be occupied as Borrower's principal residence, Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty (60) days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing which consent shall not be unreasonable withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7.      **Protection of Lender's Rights in the Property.**

If Borrower fails to perform the covenants and agreements contained in this Security Instrument or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, paying real estate taxes, flood insurance and mortgage insurance premiums, appearing in court, paying reasonable attorneys' fees, entering on the Property to make repairs, and paying property insurance premiums. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

50173868
Pg: 5 of 12
11/20/2000 04:30PM

8.    **Mortgage Insurance.**

If Lender required mortgage insurance as a condition of making the loan evidenced by the Note and secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender.

If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement of mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9.    **Inspection.**

Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10.    **Condemnation.**

The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or any part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Unless Lender and Borrower otherwise agree in writing, any application of such proceeds which does not pay the sums secured by this Security Instrument in full, shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11.    **Borrower Not Released; Forbearance by Lender Not a Waiver.**

Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy, hereunder or under the Note, shall not be a waiver of or preclude the exercise of any other right or remedy at that time, or of the same or any other right or remedy at any other time.

50173868
Pg: 6 of 12
11/20/2000 04:30PM

**12.   Successors and Assigns Bound; Joint and Several Liability; Co-Signers.**

The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 19(B).  Borrower's covenants and agreements shall be joint and several.  Any Borrower who co-signs this Security Instrument but does not execute the Note:  (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13.   Loan Charges.**

If the loan secured by this Security Instrument is subject to a law or regulation which sets maximum loan charges, and that law or regulation is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower.  Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower.  If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14.   Notices.**

Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method.  The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender.  Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower.  Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15.   Governing Law; Severability.**

This Security Instrument shall be governed by federal law including, if the Note so provides, the Alternative Mortgage Transaction Parity Act of 1982 (12 U.S.C § 3801 et. seq.), and the law of the jurisdiction in which the Property is located.  In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.  To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16.   Borrower's Copy.**

Borrower acknowledges receipt of a conformed copy or a photocopy of the Note and of this Security Instrument.

50173868
Pg: 7 of 12
11/20/2000 04:30PM

**17.    Sale of Note; Change of Loan Servicer.**

The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**18.    Hazardous Substances.**

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 18, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances; gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 18, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**19.    Lender's Rights if Borrower Fails to Keep Promises.**

If any of the events or conditions described in subparagraphs (A), (B), or (C) of this paragraph 19 shall occur, then (i) if the original principal amount of the Note exceeds $50,000, Lender may require that Borrower pay immediately the entire amount remaining unpaid under the Note and this Security Instrument (this requirement will be called "Immediate Payment In Full"); or (ii) if the original principal amount of the Note is $50,000 or less, Lender, after giving Borrower timely notice of Borrower's rights to cure as is then required by applicable law and Borrower's failure to cure within the time period set forth in such notice, may require Borrower to make Immediate Payment In Full.

If Lender requires Immediate Payment In Full, Lender may, without further demand, foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred pursuing the remedies provided in this paragraph 19 including, but not limited to, attorneys' fees and cost of title evidence to the extent permitted by applicable law.

50173868
Pg: 8 of 12
11/20/2000 04:30PM

Subject to the applicable notice and cure provisions, if any, set forth above in this paragraph 19, Lender may require Immediate Payment in Full under this paragraph 19 if:

**(A)**    Borrower is in default under the terms of the Note; or

**(B)**    All or any part of the Property, or any interest in the Property is sold or transferred (or, if Borrower is not a natural person, if a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent; or

**(C)**    Borrower fails to keep any other promise or agreement in this Security Instrument within the time set forth, or if no time is set forth in this Security Instrument, then within the time set forth in the notice sent to Borrower by Lender, or if Borrower is otherwise in default under this Security Instrument, or if any of the covenants, representations and/or warranties made by Borrower in this Security Instrument are not true and correct in any material respect or are ot7erwise breached by Borrower.

## 20.    Release.

Upon payment of all sums secured by this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

## 21.    Waivers.

Borrower, to the extent permitted by applicable law, waives and releases any errors or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

## 22.    Reinstatement.

Borrower's time to reinstate, to the extent, if any, provided in paragraph 19, shall extend to one hour prior to commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

## 23.    Purchase Money Mortgage.

If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

50173868
Pg: 9 of 12
11/20/2000 04:30PM

24.    **Interest Rate After Judgement.**

Borrower agrees that the interest rate payable after a judgement is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

25.    **Riders to this Security Instrument.**

If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

**IN WITNESS WHEREOF,** Borrower has signed and sealed this Security Instrument.

_____
LARRY D. FOWLER

_____
RHODIE D. FOWLER

Witness: _____


I hereby certify that the precise address of the Lender (Mortgagee) is **20 Waterview Boulevard, Parsippany, New Jersey 07054-1267.**


On Behalf of the Lender

By: _____

Title: _____

50173868
Pg: 10 of 12
11/20/2000 04:30PM

COMMONWEALTH OF PENNSYLVANIA:        )
                                     ss:
COUNTY OF PHILADELPHIA               )

On this 19th day of OCTOBER, 2000, before me _____, the undersigned _____ officer, personally appeared LARRY D. FOWLER MARRIED, RHODIE D. FOWLER HIS WIFE , known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes therein contained.

**In Witness Whereof**, I hereunto set my hand and official seal.

_____
Notary Public

My Commission Expires: _____

```
NOTARIAL SEAL
Annette C. McWilliams, Notary Public
Bensalem Twp., Bucks County
My Commission Expires March 5, 2001
```

50173868
Pg: 11 of 12
11/20/2000 04:30PM

ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED. SITUATE ON THE SOUTHWEST SIDE OF FILLMORE STREET IN THE 23RD WARD OF THE CITY OF PHILADELPHIA, AT THE DISTANCE OF ONE HUNDRED FORTY FIVE FEET SIX AND THREE QUARTER INCHES SOUTHEAST OF MULBERRY STREET.

CONTAINING IN FRONT OR BREADTH ON SAID FILLMORE STREET FIFTEEN FEET AND THREE QUARTER INCHES AND EXTENDING OF THAT WIDTH IN LENGTH OR DEPTH SOUTHWESTWARDLY AT RIGHT ANGLES TO FILLMORE STREET SIXTY FEET WIDE TO A CERTAIN PROPOSED THREE FEET WIDE ALLEY.

BEING NO. 1818 FILLMORE STREET.

TOGETHER WITH THE FREE AND COMMON USE, RIGHT, LIBERTY AND PRIVILEGE OF THE ABOVE MENTIONED ALLEY AS AND FOR A PASSAGEWAY AND WATERCOURSE AT ALL TIMES HEREAFTER FOREVER.

**PENNSYLVANIA**
COUNTY OF PHILADELPHIA

WHEN RECORDED MAIL TO:
FIRST AMERICAN MORTGAGE SOLUTIONS, 1795 INTERNATIONAL WAY, IDAHO FALLS, ID 83402, PH. 208-528-9895

# ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt whereof is hereby acknowledged, **CITIBANK, N.A., NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR THE NRZ PASS-THROUGH TRUST VI** located at **388 GREENWICH STREET, 14TH FLOOR, NEW YORK, NY 10013**, Assignor, does hereby grant, bargain, assign, transfer, convey, and set over unto **NRZ PASS-THROUGH TRUST II** located at **60 LIVINGSTON AVENUE, EP-MN-WS3D, ST. PAUL, MN 55107**, Assignee, its successors and assigns, that certain Mortgage dated **OCTOBER 19, 2000** executed by **LARRY D. FOWLER MARRIED, RHODIE D. FOWLER HIS WIFE**, Mortgagor, to **CHAMPION MORTGAGE CO., INC.**, Original Mortgagee, in the amount of **$32,300.00** and recorded on **NOVEMBER 20, 2000** in the Office of the Register, Recorder, or County Clerk of **PHILADELPHIA** County, State of **PENNSYLVANIA**, as Document No. **50173868**, more particularly described and commonly known as:
**SEE ATTACHED LEGAL DESCRIPTION**
Property Address: **1818 FILLMORE STREET, PHILADELPHIA, PA 19124**
**CITY OF PHILADELPHIA**

TOGETHER WITH all rights, title, and interest in and to the premises, accrued or to accrue under said Mortgage.

TO HAVE AND HOLD the same unto Assignee, its successors and assigns, to Assignees proper use and benefit.

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed on ___9/6/19___.

**CITIBANK, N.A., NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR THE NRZ PASS-THROUGH TRUST VI, BY NEWREZ LLC F/K/A NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT MORTGAGE SERVICING, ITS ATTORNEY IN FACT**

_____
**STEPHANIE N. WESSEL, SUPERVISOR**

STATE OF **SOUTH CAROLINA**      COUNTY OF **GREENVILLE**    ) ss.
On ___9/6/19___, before me, Kayla Stanton, personally appeared **STEPHANIE N. WESSEL** known to me to be the **SUPERVISOR** of **CITIBANK, N.A., NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR THE NRZ PASS-THROUGH TRUST VI, BY NEWREZ LLC F/K/A NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT MORTGAGE SERVICING, ITS ATTORNEY IN FACT** the corporation that executed the instrument or the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

Kayla Stanton    (COMMISSION EXP.
3/28/2029   )
NOTARY PUBLIC

Page 1 of

KAYLA STANTON
MY COMMISSION
EXPIRES
03/28/2029
NOTARY PUBLIC
SOUTH CAROLINA

I do hereby certify that the precise address of the Assignee Residence is:
**NRZ PASS-THROUGH TRUST II. 60 LIVINGSTON AVENUE, EP-MN-WS3D, ST. PAUL, MN 55107**

**STEPHANIE N. WESSEL. SUPERVISOR**

**Page 2 of 3**

Legal Description

ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS AND
IMPROVEMENTS THEREON ERECTED. SITUATE ON THE SOUTHWEST SIDE
OF FILLMORE STREET IN THE 23RD WARD OF THE CITY OF PHILADELPHIA,
AT THE DISTANCE OF ONE HUNDRED FORTY FIVE FEET SIX AND THREE
QUARTER INCHES SOUTHEAST OF MULBERRY STREET.

CONTAINING IN FRONT OR BREADTH ON SAID FILLMORE STREET FIFTEEN
FEET AND THREE QUARTER INCHES AND EXTENDING OF THAT WIDTH IN
LENGTH OR DEPTH SOUTHWESTWARDLY AT RIGHT ANGLES TO FILLMORE
STREET SIXTY FEET WIDE TO A CERTAIN PROPOSED THREE FEET WIDE
ALLEY.

**52992076**
**Page: 1 of 4**
11/23/2015 03:22PM

Recording Requested By:

This Document Recorded
11/23/2015
03:22PM
Doc Code: A       Commissioner of Records, City of Philadelphia

Doc Id: 52992076
Receipt
Rec Fee   220.00

Prepared By:
**T.D. Service Company**
**LR Department**
**4000 W Metropolitan Dr Ste 400**
**Orange, CA  92868**
**(714) 543-8372, OSBALDO VIDRIO**

**When Recorded Return to:**
Attn: LR Department (Cust: 671)
T.D. Service Company
4000 W. Metropolitan Drive, Suite 400
Orange, CA 92868

**(714) 543-8372**

Property Address: **1818 FILLMORE STREET, PHILADELPHIA, PA 19124-0000**.

Space above for Recorder's use

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, **HOUSEHOLD FINANCE CONSUMER DISCOUNT COMPANY, A PENNSYLVANIA CORPORATION, C/O HSBC FINANCE CORPORATION 26525 NORTH RIVERWOODS BLVD, METTAWA, IL  60045-0000**, hereby assign and transfer to

Wilmington Savings Fund Society, FSB d/b/a/
Christiana Trust, not in its individual capacity but solely
as trustee for the RMAC Trust, Series 2015-5T
500 Delaware Avenue, 11th Floor, Wilmington, DE  19801

., all its right, title and interest in and to said Mortgage in the amount of **$32,300.00**, recorded in the State of **PENNSYLVANIA, CITY** of **PHILADELPHIA**, County of **PHILADELPHIA** Official Records, dated **OCTOBER 19, 2000** and recorded on **NOVEMBER 20, 2000, as Instrument No. 50173868, in Book No. ---, at Page No. ---**.
Executed by: **LARRY FOWLER AND RHODIE FOWLER** (Original Mortgagor).
Original Mortgagee: **CHAMPION MORTGAGE CO. INC.**
Legal Description: **See Attached Exhibit.**

Page 1

Date: _8·21·15_

**HOUSEHOLD FINANCE CONSUMER DISCOUNT COMPANY, A PENNSYLVANIA CORPORATION, BY RUSHMORE LOAN MANAGEMENT SERVICES LLC, ITS ATTORNEY IN FACT**
Power of Attorney Record As Instrument # _____ In Book No. _____ At Page No. _____.

By: _Afarmer_     Angela Farmer     Vice President
(Name,Title):

State of **TEXAS**                    }
County of **DALLAS**                } ss.

On _____, before me, the undersigned officer, personally appeared _____, who acknowledged herself/himself to be the _____ of **HOUSEHOLD FINANCE CONSUMER DISCOUNT COMPANY, A PENNSYLVANIA CORPORATION, BY RUSHMORE LOAN MANAGEMENT SERVICES LLC, ITS ATTORNEY IN FACT**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. Witness my hand and official seal.

(Notary Name): _____
My commission expires: _____

I hereby certify that the precise address of the within named assignee is:

_____,

By: _Afarmer_     Angela Farmer     Vice President
(Name,Title):

State of   TEXAS                } SS:

County of   DALLAS

On _____8/21/15_____ before me the he undersigned, a Notary Public and for said State

personally appeared, _Angela Farmer_____, personally

known to me (or proved to me on the basis of satisfactory evidence) to be the duly authorized person who

executed the within instrument on behalf HOUSEHOLD FINANCE CONSUMER DISCOUNT COMPANY, A

PENNSYLVANIA CORPORATION, BY RUSHMORE LOAN MANAGEMENT SERVICES LLC, ITS ATTORNEY IN

FACT and acknowledged/sworn to me that such

_____Vice President_____ executed

the within instrument  pursuant to its by-laws or a resolution of its board of directors.

Witness my hand and official seal

_Pamela G. Paschall_

Notary Public in and for said County and State

My commission expires on:



PAMELA G PASCHALL
My Commission Expires
May 6, 2019

ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED. SITUATE ON THE SOUTHWEST SIDE OF FILLMORE STREET IN THE 23RD WARD OF THE CITY OF PHILADELPHIA, AT THE DISTANCE OF ONE HUNDRED FORTY FIVE FEET SIX AND THREE QUARTER INCHES SOUTHEAST OF MULBERRY STREET.

CONTAINING IN FRONT OR BREADTH ON SAID FILLMORE STREET FIFTEEN FEET AND THREE QUARTER INCHES AND EXTENDING OF THAT WIDTH IN LENGTH OR DEPTH SOUTHWESTWARDLY AT RIGHT ANGLES TO FILLMORE STREET SIXTY FEET WIDE TO A CERTAIN PROPOSED THREE FEET WIDE ALLEY.

BEING NO. 1818 FILLMORE STREET.

TOGETHER WITH THE FREE AND COMMON USE, RIGHT, LIBERTY AND PRIVILEGE OF THE ABOVE MENTIONED ALLEY AS AND FOR A PASSAGEWAY AND WATERCOURSE AT ALL TIMES HEREAFTER FOREVER.

**51703025**
**Page: 1 of 4**
05/31/2007 01:12PM

**Loan#:**
**Effective Date: 11/29/2006**

This Document Recorded
05/31/2007
01:12PM
Doc Code: A       Commissioner of Records, City of Philadelphia

Doc Id: 51703025
Receipt
Rec Fee: 124.60

Page 1

### ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **CHAMPION MORTGAGE, A DIVISION OF KEYBANK, NA AS SUCCESSOR BY MERGER TO CHAMPION MORTGAGE, A DIVISION OF KEY BANK, USA, NA AS SUCCESSOR IN INTEREST TO CHAMPION MORTGAGE CO., INC., A NATIONAL BANK, WHOSE ADDRESS IS 2 GATEHALL DRIVE , PARSIPPANY, NJ 07054, (ASSIGNOR),** by these presents does convey, grant, sell, assign, transfer and set over the described mortgage together with the certain note(s) described therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to **HOUSEHOLD FINANCE CONSUMER DISCOUNT COMPANY, WHOSE ADDRESS IS 577 LAMONT ROAD , ELMHURST, IL 60126, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).**
Said mortgage dated 10/19/2000 in the amount of $32,300.00 made by **LARRY D. FOWLER & RHODIE D. FOWLER** to **CHAMPION MORTGAGE CO, INC** recorded on 11/20/2000 , in the Office of the Recorder of Deeds of PHILADELPHIA County, Pennsylvania, in Book  , Page  (or Document No. 50173868 )

Mortgage Premise: 1818 FILLMORE STREET
                  PHILADELPHIA, PA 19124

In Witness whereof, the said Corporation has caused this instrument to be executed in its corporate name by Lorraine Gliatta  its DIVISION OFFICER  and authorized signer, THIS 23RD DAY OF FEBRUARY IN THE YEAR 2007
**CHAMPION MORTGAGE, A DIVISION OF KEYBANK, NA AS SUCCESSOR BY MERGER TO CHAMPION MORTGAGE, A DIVISION OF KEY BANK, USA, NA AS SUCCESSOR IN INTEREST TO CHAMPION MORTGAGE CO., INC.**

BY: *Lorraine Gliatta*
    **Lorraine Gliatta    DIVISION OFFICER**



Loan#:
Effective Date: 11/29/2006


ASSIGNMENT OF MORTGAGE                    Page 2

STATE OF NEW JERSEY              COUNTY OF Morris
On 02/23/2007 , before me, Leisa Van Dunk  the Undersigned, Notary Public,
personally appeared Lorraine Gliatta , who acknowledged him/herself to be the
DIVISION OFFICER  of CHAMPION MORTGAGE, A DIVISION OF KEYBANK, NA AS
SUCCESSOR BY MERGER TO CHAMPION MORTGAGE, A DIVISION OF KEY BANK, USA, NA AS
SUCCESSOR IN INTEREST TO CHAMPION MORTGAGE CO., INC.  a corporation, and that
s/he as such, being authorized so to do, executed the foregoing instrument
for the purposes therein contained, by signing the name of the corporation by
themselves as such corporate officers.
IN WITNESS WHEREOF, I hereunto set my hand and official seal.


Leisa Van Dunk                          Notary Public
My commission expires: 03/22/2010

```
LEISA VAN DUNK
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES MARCH 22, 2010
```

I  LEISA VAN DUNK          , do certify that the address of the above assignee is:
    HOUSEHOLD FINANCE CONSUMER DISCOUNT COMPANY, WHOSE ADDRESS IS 577
LAMONT ROAD , ELMHURST, IL 60126, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).

    Prepared by:
    J. Lesinski/NTC,2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
Return To:
Nationwide Title Clearing
2100 Alt. 19 North
Palm Harbor, FL 34683

Loan Number                                                    Page 3
Assignment of Mortgage from:
CHAMPION MORTGAGE, A DIVISION OF KEYBANK, NA AS SUCCESSOR BY MERGER TO CHAMPION
MORTGAGE, A DIVISION OF KEY BANK, USA, NA AS SUCCESSOR IN INTEREST TO CHAMPION
MORTGAGE CO., INC., A NATIONAL BANK, WHOSE ADDRESS IS 2 GATEHALL DRIVE ,
PARSIPPANY, NJ 07054, (ASSIGNOR),
to:
HOUSEHOLD FINANCE CONSUMER DISCOUNT COMPANY, WHOSE ADDRESS IS 577 LAMONT ROAD ,
ELMHURST, IL 60126, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).

Mortgagor: LARRY D. FOWLER & RHODIE D. FOWLER

When Recorded Return To:
Nationwide Title Clearing
2100 Alt. 19 North
Palm Harbor, FL 34683

All that certain lot or piece of ground situated in
Mortgage Premise: 1818 FILLMORE STREET
                   PHILADELPHIA, PA 19124
PHILADELPHIA
(Borough or Township, if stated), Commonwealth of Pennsylvania.
Being more particularly described in said mortgage.


SEE ATTACHED EXHIBIT A

ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS AND
IMPROVEMENTS THEREON ERECTED. SITUATE ON THE SOUTHWEST SIDE
OF FILLMORE STREET IN THE 23RD WARD OF THE CITY OF PHILADELPHIA,
AT THE DISTANCE OF ONE HUNDRED FORTY FIVE FEET SIX AND THREE
QUARTER INCHES SOUTHEAST OF MULBERRY STREET.

CONTAINING IN FRONT OR BREADTH ON SAID FILLMORE STREET FIFTEEN
FEET AND THREE QUARTER INCHES AND EXTENDING OF THAT WIDTH IN
LENGTH OR DEPTH SOUTHWESTWARDLY AT RIGHT ANGLES TO FILLMORE
STREET SIXTY FEET WIDE TO A CERTAIN PROPOSED THREE FEET WIDE
ALLEY.

BEING NO. 1818 FILLMORE STREET.

52992076
**Page: 1 of 4**
11/23/2015 03:22PM

Recording Requested By:

This Document Recorded
11/23/2015
03:22PM
Doc Code: A

Doc Id: 52992076
Receipt #: ▮▮▮▮▮
Rec Fee: 220.00
Commissioner of Records, City of Philadelphia

Prepared By:
**T.D. Service Company**
**LR Department**
**4000 W Metropolitan Dr Ste 400**
**Orange, CA  92868**
**(714) 543-8372, OSBALDO VIDRIO**

When Recorded Return to:
Attn: LR Department ▮▮▮▮▮
T.D. Service Company
4000 W. Metropolitan Drive, Suite 400
Orange, CA 92868

Property Address:  **1818 FILLMORE STREET, PHILADELPHIA, PA 19124-0000.**
———————————— Space above for Recorder's use ————————————

Customer#          Service#
Loan#

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, **HOUSEHOLD FINANCE CONSUMER DISCOUNT COMPANY, A PENNSYLVANIA CORPORATION, C/O HSBC FINANCE CORPORATION 26525 NORTH RIVERWOODS BLVD, METTAWA, IL  60045-0000,**
hereby assign and transfer to

Wilmington Savings Fund Society, FSB d/b/a/
Christiana Trust, not in its individual capacity but solely
as trustee for the RMAC Trust, Series 2015-5T
500 Delaware Avenue, 11th Floor, Wilmington, DE  1980l

——————————————————————————————————
——————————————————————————————————
——————————————————————————————————

**,**, all its right, title and interest in and to said Mortgage in
the amount of **$32,300.00**, recorded in the State of **PENNSYLVANIA, CITY of
PHILADELPHIA,** County of **PHILADELPHIA** Official Records, dated **OCTOBER 19,
2000** and recorded on **NOVEMBER 20, 2000, as Instrument No. 50173868, in Book No.
---, at Page No. ---.**
Executed by: **LARRY FOWLER AND RHODIE FOWLER** (Original Mortgagor).
Original Mortgagee:  **CHAMPION MORTGAGE CO. INC.**
Legal Description: **See Attached Exhibit.**

Page 1

Date: **8·21·15**

**HOUSEHOLD FINANCE CONSUMER DISCOUNT COMPANY, A PENNSYLVANIA CORPORATION, BY RUSHMORE LOAN MANAGEMENT SERVICES LLC, ITS ATTORNEY IN FACT**

Power of Attorney Record As Instrument # _____ In Book No. _____ At Page No. _____.

By: _____  Angela Farmer    **Vice President**
      (Name,Title):

State of    **TEXAS**                          }
County of  **DALLAS**                         } ss.

On _____, before me, the undersigned officer, personally appeared _____, who acknowledged herself/himself to be the _____ of **HOUSEHOLD FINANCE CONSUMER DISCOUNT COMPANY, A PENNSYLVANIA CORPORATION, BY RUSHMORE LOAN MANAGEMENT SERVICES LLC, ITS ATTORNEY IN FACT**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. Witness my hand and official seal.


(Notary Name): _____
My commission expires: _____

I hereby certify that the precise address of the within named assignee is:

_____,

By: _____  Angela Farmer    **Vice President**
      (Name,Title):

Page **2**

State of   TEXAS                          } SS:

County of   DALLAS


On ___ 8/21/15 ___ before me the he undersigned, a Notary Public and for said State
personally appeared, ___ Angela Farmer _____ , personally
known to me (or proved to me on the basis of satisfactory evidence) to be the duly authorized person who
executed the within instrument on behalf HOUSEHOLD FINANCE CONSUMER DISCOUNT COMPANY, A
PENNSYLVANIA CORPORATION, BY RUSHMORE LOAN MANAGEMENT SERVICES LLC, ITS ATTORNEY IN
FACT and acknowledged/sworn to me that such
_____ Vice President _____ executed
the within instrument  pursuant to its by-laws or a resolution of its board of directors.

Witness my hand and official seal


*Pamela D. Paschall*

Notary Public in and for said County and State

My commission expires on:

PAMELA G PASCHALL
My Commission Expires
May 6, 2019

ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS AND
IMPROVEMENTS THEREON ERECTED, SITUATE ON THE SOUTHWEST SIDE
OF FILLMORE STREET IN THE 23RD WARD OF THE CITY OF PHILADELPHIA,
AT THE DISTANCE OF ONE HUNDRED FORTY FIVE FEET SIX AND THREE
QUARTER INCHES SOUTHEAST OF MULBERRY STREET.

CONTAINING IN FRONT OR BREADTH ON SAID FILLMORE STREET FIFTEEN
FEET AND THREE QUARTER INCHES AND EXTENDING OF THAT WIDTH IN
LENGTH OR DEPTH SOUTHWESTWARDLY AT RIGHT ANGLES TO FILLMORE
STREET SIXTY FEET WIDE TO A CERTAIN PROPOSED THREE FEET WIDE
ALLEY.

BEING NO. 1818 FILLMORE STREET.

TOGETHER WITH THE FREE AND COMMON USE, RIGHT, LIBERTY AND
PRIVILEGE OF THE ABOVE MENTIONED ALLEY AS AND FOR A
PASSAGEWAY AND WATERCOURSE AT ALL TIMES HEREAFTER FOREVER.

eRecorded in Philadelphia PA    Doc Id: 53047977
06/27/2018 08:09 PM    Page 1 of 5    Rec Fee: $224.75
Receipt
Records Department    Doc Code: A

Prepared by: Audrey Trumble
AUDREY TRUMBLE
3001 Hackberry Rd
Irving, TX 75063
Recording Requested By and Return To:
SHELL POINT MORTGAGE SERVICING
ATTN: CYNTHIA BROCK 55 BEATTIE PLACE SUITE 600
GREENVILLE, SC 29601

**Tax Parcel Identification Number:** █████████

## ASSIGNMENT OF SECURITY INSTRUMENT

Date: ___JUN 1 9 2018___    Project Code:█████████    Data ID:
Property Address: 1818 FILLMORE STREET, PHILADELPHIA, PA 19124
Property Location: 23 WARD CITY OF PHILADELPHIA
Owner and Assignor ("Assignor") of Mortgage ("Security Instrument"):
WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT IN ITS
INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR RMAC TRUST, SERIES 2015-5T, 500
Delaware Avenue, 11th Floor, Wilmington, De 19801
Assignee:
U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS
TRUSTEE OF NRZ PASS-THROUGH TRUST II, 60 LIVINGSTON AVE, EP-MN-WS3D ST PAUL,
MN 55107

Security Instrument is described as follows:
    Date:            10/19/2000
    Original Amount:  $32300.00
    Borrower/Grantor/Mortgagor/Trustor:  LARRY D. FOWLER MARRIED, RHODIE D. FOWLER
HIS WIFE
    Mortgagee/Beneficiary: CHAMPION MORTGAGE CO., INC.
    Mortgage Recorded or Filed on 11/20/2000 in Instrument Number 50173868 in the Official Records
in the County Recorder's or Clerk's Office of PHILADELPHIA COUNTY, PA.

### SEE EXHIBIT "A", DOCUMENT HISTORY

Data ID:

Property (including any improvements) Subject to Security Instrument:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

For good, valuable, and sufficient consideration received, Assignor sells, transfers, assigns, grants, conveys and sets over the Security Instrument and all of Assignor's right, title and interest in the Security Instrument to Assignee and Assignee's successors and assigns, forever.

When the context requires, singular nouns and pronouns include the plural.

WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR RMAC TRUST, SERIES 2015-5T, BY RUSHMORE LOAN MANAGEMENT SERVICES LLC, ITS APPOINTED ATTORNEY IN FACT

By: _____ **Enadia Pierce**
                                     Assistant Vice President

Title: _____

*(Page 2 of 3 Pages)*

Data ID:

STATE OF TX                          §
COUNTY OF DALLAS                     §

On this the _____ day of __JUN 1 9 2018__, 20____, before me,
_____Stacey Burdett_____, the undersigned officer, personally appeared
_____Enadia Pierce_____ who acknowledged himself/herself to
be the _____Assistant Vice President_____ of WILMINGTON SAVINGS FUND SOCIETY,
FSB, D/B/A CHRISTIANA TRUST, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS
TRUSTEE FOR RMAC TRUST, SERIES 2015-5T, BY RUSHMORE LOAN MANAGEMENT
SERVICES LLC, ITS APPOINTED ATTORNEY IN FACT   , and that he/she as such
_____Enadia Pierce_____, being authorized so to do, executed the foregoing instrument
for the purposes therein contained by signing the name of the entity by himself/herself as
_____Assistant Vice President_____.

In witness whereof I hereunto set my hand and official seal.

_____
Notary Public

**Stacey Burdett**
(Printed Name)

My commission expires:_____**9/21/2021**_____

I certify that the precise residence of the within named Assignee is: 60 LIVINGSTON AVE,
EP-MN-WS3D-ST PAUL, MN 55107

Signature_____

STACEY BURDETT
Notary Public, State of Texas
Comm. Expires 09-21-2021
Notary ID ▮▮▮▮▮▮

*(Page 3 of 3 Pages)*

Data ID:

## LEGAL DESCRIPTION

ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS    AND IMPROVEMENTS THEREON ERECTED. SITUATE ON THE SOUTHWEST SIDE OF FILLMORE STREET IN THE 23RD WARD OF THE CITY OF  PHILADELPHIA, AT THE DISTANCE OF ONE HUNDRED FORTY FIVE  FEET SIX AND THREE QUARTER INCHES SOUTHEAST OF MULBERRY  STREET.  CONTAINING IN FRONT OR BREADTH ON SAID FILLMORE STREET FIFTEEN FEET, AND THREE QUARTER INCHES AND EXTENDING  OF THAT WIDTH IN LENGTH OR DEPTH SOUTHWESTWARDLY AT RIGHT  ANGLES TO FILLMORE STREET SIXTY FEET WIDE TO A CERTAIN  PROPOSED THREE FEET WIDE ALLEY. BEING NO. 1818 FILLMORE  STREET.   TOGETHER WITH THE FREE AND COMMON USE, RIGHT, LIBERTY AND PRIVILEGE OF THE ABOVE MENTIONED ALLEY AS AND    FOR A PASSAGEWAY AND WATERCOURSE AT ALL TIMES HEREAFTER  FOREVER.

Data ID:

# EXHIBIT "A", DOCUMENT HISTORY

Assigned From:  CHAMPION MORTGAGE, A DIVISION OF KEYBANK, NA AS SUCCESSOR BY MERGER TO CHAMPION MORTGAGE, A DIVISION OF KEY BANK, USA, NA AS SUCCESSOR IN INTEREST TO CHAMPION MORTGAGE CO., INC., A NATIONAL BANK

Assigned To:  HOUSEHOLD FINANCE CONSUMER DISCOUNT COMPANY

Date of Assignment:  2/23/2007

Recording Date: 5/31/2007  Book/Liber: N/A  Page: N/A  Instrument Number: 51703025


Assigned   From:      HOUSEHOLD   FINANCE   CONSUMER   DISCOUNT   COMPANY,   A PENNSYLVANIA CORPORATION, BY RUSHMORE LOAN MANAGEMENT SERVICES LLC, ITS ATTORNEY IN FACT

Assigned To:  WILMINGTON SAVINGS FUND SOCIETY, FSB D/B/A/ CHRISTIANA TRUST, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE RMAC TRUST, SERIES 2015-5T

Date of Assignment:  8/21/2015

Recording Date: 11/23/2015  Book/Liber: N/A  Page: N/A  Instrument Number: 52992076

eRecorded in Philadelphia PA / Doc Id: 53483547
10/23/2018 09:30 AM
Receipt ████████
Records Department   Doc Code: A

PENNSYLVANIA
COUNTY OF **PHILADELPHIA**

WHEN RECORDED MAIL TO
FIRST AMERICAN MORTGAGE SOLUTIONS, 1795 INTERNATIONAL WAY, IDAHO FALLS, ID 83402, PH 208-528-9895

# ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt whereof is hereby acknowledged, **US BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE OF NRZ PASS-THROUGH TRUST II** located at **C/O NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT MORTGAGE SERVICING 55 BEATTIE PLACE, SUITE 110, MS#001, GREENVILLE, SC 29601**, Assignor, does hereby grant, bargain, assign, transfer, convey, and set over unto **CITIBANK, N.A., NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE OF NRZ PASS-THROUGH TRUST VI** located at **388 GREENWICH STREET, 14TH FLOOR, NEW YORK, NY 10013**, Assignee, its successors and assigns, that certain Mortgage dated **OCTOBER 19, 2000** executed by **LARRY D. FOWLER MARRIED, RHODIE D. FOWLER HIS WIFE**, Mortgagor, to **CHAMPION MORTGAGE CO., INC.**, Original Mortgagee, in the amount of **$32,300.00** and recorded on **NOVEMBER 20, 2000** in the Office of the Register, Recorder, or County Clerk of **PHILADELPHIA** County, State of **PENNSYLVANIA**, as Document No. **50173868**, more particularly described and commonly known as:
**SEE ATTACHED LEGAL DESCRIPTION**
Property Address: **1818 FILLMORE STREET, PHILADELPHIA, PA 19124**
**CITY OF PHILADELPHIA**

TOGETHER WITH all rights, title, and interest in and to he premises, accrued or to accrue under said Mortgage.
TO HAVE AND HOLD the same unto Assignee, its successors and assigns, to Assignees proper use and benefit.
IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed this  10-18-18  .
**US BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE OF NRZ PASS-THROUGH TRUST II, BY NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT MORTGAGE SERVICING, ITS ATTORNEY IN FACT**

_Stephanie Wessel_
STEPHANIE N. WESSEL, SUPERVISOR

STATE OF **SOUTH CAROLINA**          COUNTY OF **GREENVILLE**     ) ss.
On  10-18-18  , before me, **TAMIAH B. KERNS**, personally appeared STEPHANIE N. WESSEL, known to me to be the **SUPERVISOR** of US BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE OF NRZ PASS-THROUGH TRUST II, BY NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT MORTGAGE SERVICING, ITS ATTORNEY IN FACT the corporation that executed the instrument or the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

_Tamiah B. Kerns_
**TAMIAH B. KERNS (COMMISSION EXP. 4/21/2020)**
NOTARY PUBLIC

I do hereby certify that the precise address of the Assignee Residence is:
**CITIBANK, N.A., NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE OF NRZ PASS-THROUGH TRUST VI, 388 GREENWICH STREET, 14TH FLOOR, NEW YORK, NY 10013**

_Stephanie Wessel_
STEPHANIE N. WESSEL, SUPERVISOR

**Page 1 of 2**

[Notary seal: TAMIAH B. KERNS / MY COMMISSION EXPIRES 4/21/2020 / NOTARY PUBLIC / SOUTH CAROLINA]

FOWLER

Legal Description

ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS AND
IMPROVEMENTS THEREON ERECTED. SITUATE ON THE SOUTHWEST SIDE
OF FILLMORE STREET IN THE 23RD WARD OF THE CITY OF PHILADELPHIA,
AT THE DISTANCE OF ONE HUNDRED FORTY FIVE FEET SIX AND THREE
QUARTER INCHES SOUTHEAST OF MULBERRY STREET.

CONTAINING IN FRONT OR BREADTH ON SAID FILLMORE STREET FIFTEEN
FEET AND THREE QUARTER INCHES AND EXTENDING OF THAT WIDTH IN
LENGTH OR DEPTH SOUTHWESTWARDLY AT RIGHT ANGLES TO FILLMORE
STREET SIXTY FEET WIDE TO A CERTAIN PROPOSED THREE FEET WIDE
ALLEY.

eRecorded in Philadelphia PA  Doc Id: 54505117500
12/29/2025 02:26 PM    Page 1 of 4    Rec Fee: $246.75
Receipt#: ████████
Records Department    Doc Code: A

Prepared By:
**Doc Curative Department, NewRez
LLC dba Shellpoint Mortgage
Servicing, 75 Beattie Place, Suite 300,
Greenville, SC 29601, Toll-free
Phone: (800) 365-7107**

When Recorded Return To:
Shellpoint Mortgage Servicing
C/O Nationwide Title Clearing, LLC
2100 Alt. 19 North
Palm Harbor, FL 34683

## ASSIGNMENT OF MORTGAGE

**SEND ALL OTHER BORROWER OR LOAN RELATED CORRESPONDENCE TO: Shellpoint
Mortgage Servicing, P.O. Box 10826, Greenville, SC 29603-0826, Toll-free Phone: (800) 365-7107**

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **NRZ PASS-THROUGH TRUST II, WHOSE ADDRESS IS 75 BEATTIE PLACE SUITE 300, GREENVILLE, SC 29601, (ASSIGNOR)** by these presents does convey, grant, assign, transfer and set over the described Mortgage therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to **U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE OF THE NRZ PASS-THROUGH TRUST XI, WHOSE ADDRESS IS 60 LIVINGSTON AVE, MAILCODE: EP-MN-WS3D, ST PAUL, MN 55107, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Mortgage is dated 10/19/2000, in the amount of $32,300.00, made by **LARRY D FOWLER AND RHODIE D FOWLER** to **CHAMPION MORTGAGE CO., INC.,** recorded on 11/20/2000, in the Office of the Recorder of Deeds of **PHILADELPHIA** County, **Pennsylvania,** in **Doc ID 50173868** Modification: 07/24/2017 INST:53242278 Modification: 06/04/2020 INST: 53674173.
      SEE ATTACHED EXHIBIT A

Property is commonly known as: 1818 FILLMORE STREET, CITY OF PHILADELPHIA, PA 19124.

See Exhibit attached for Assignments, Modifications etc.

Dated on ~~DEC 0 0 2025~~    (MM/DD/YYYY) 12-29-2025

**NRZ PASS-THROUGH TRUST II, by NEWREZ LLC F/K/A NEW PENN FINANCIAL LLC D/B/A SHELLPOINT MORTGAGE SERVICING, its Attorney-in-Fact (POA RECORDED: 12/29/21 INSTR#: 53930275)**

By: _____

    **BRYENT ARMENTROUT**

    **VICE PRESIDENT**

PAGE 1

**Loan Number** ████████

STATE OF ARIZONA    COUNTY OF MARICOPA

**DEC 2 9 2025**

The foregoing instrument was acknowledged before me this ~~DEC 3 0 2025~~ _____ (MM/DD/YYYY) by

BRYENT ARMENTROUT of NEWREZ LLC F/K/A NEW PENN FINANCIAL LLC D/B/A

SHELLPOINT MORTGAGE SERVICING as Attorney-in-Fact for NRZ PASS-THROUGH TRUST II on

behalf of the corporation.

_____
**KARINA MALDONADO**
Notary Public - STATE OF ARIZONA
Commission expires: **NOV 2 2 2027**

KARINA MALDONADO
Notary Public - Arizona
Maricopa County
Commission #
My Comm. Expires Nov 22, 2027

Assignment of Mortgage from:
**NRZ PASS-THROUGH TRUST II, WHOSE ADDRESS IS 75 BEATTIE PLACE SUITE 300, GREENVILLE, SC 29601, (ASSIGNOR)**

to:
**U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE OF THE NRZ PASS-THROUGH TRUST XI, WHOSE ADDRESS IS 60 LIVINGSTON AVE, MAILCODE: EP-MN-WS3D, ST PAUL, MN 55107, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)**

Mortgagor: **LARRY D FOWLER AND RHODIE D FOWLER**

All that certain lot or piece of ground situated in
Mortgage Premises: 1818 FILLMORE STREET
        CITY OF PHILADELPHIA, PA 19124
(Borough or Township, if stated), Commonwealth of Pennsylvania.
Being more particularly described in said Mortgage.

I, Bryent Armentrout , hereby certify that the below information and address for the assignee are correct:
**U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE OF THE NRZ PASS-THROUGH TRUST XI, WHOSE ADDRESS IS 60 LIVINGSTON AVE, MAILCODE: EP-MN-WS3D, ST PAUL, MN 55107, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)**

By: _____
**BRYENT ARMENTROUT    VICE PRESIDENT**

PAGE 2

**Loan Number** 

"EXHIBIT"

**Exhibit A**

ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS AND
IMPROVEMENTS THEREON ERECTED.  SITUATE ON THE SOUTHWEST SIDE
OF FILLMORE STREET IN THE 23RD WARD OF THE CITY OF PHILADELPHIA,
AT THE DISTANCE OF ONE HUNDRED FORTY FIVE FEET SIX AND THREE
QUARTER INCHES SOUTHEAST OF MULBERRY STREET.

CONTAINING IN FRONT OR BREADTH ON SAID FILLMORE STREET FIFTEEN
FEET AND THREE QUARTER INCHES AND EXTENDING OF THAT WIDTH IN
LENGTH OR DEPTH SOUTHWESTWARDLY AT RIGHT ANGLES TO FILLMORE
STREET SIXTY FEET WIDE TO A CERTAIN PROPOSED THREE FEET WIDE
ALLEY.

Shellpoint Mortgage Servicing
55 Beattie Place Suite 110 ███
Greenville, SC 29601
Telephone: 866-316-1840

[Space Above This Line For Recording Data]

## MODIFICATION AGREEMENT

Borrower ("I"): LARRY D FOWLER and RHODIE D FOWLER

Lender or Servicer ("Lender"): NewRez LLC D/B/A Shellpoint Mortgage Servicing as Attorney in Fact for NRZ Pass-Through Trust II

Date of mortgage, deed of trust, or security deed ("Mortgage") and Note: 10/19/2000

Loan Number ███████

Property Address ("Property"): 1818 FILLMORE STREET, PHILADELPHIA, PA 19124

If my representations and covenants in Section 1 continue to be true in all material respects, then this Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return the original versions of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:

   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future.

   B. The Property has not been condemned.

   C. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage.

   D. I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Modification Program ("Program")).

   E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct.

   F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so.

   G. I have made or will make all payments required under a Trial Period Plan.

   H. I/We, LARRY D FOWLER and RHODIE D FOWLER, may receive a discharge in a bankruptcy proceeding after signing the Note and Mortgage/Deed of Trust. I and the Lender acknowledge and agree that this Agreement is not an attempt to collect, recover, enforce, or offset this indebtedness against me personally, does not affect the discharge of my personal liability, and shall not be construed as a waiver of the discharge or an attempt to revive personal liability for this indebtedness. I understand that I am not obligated to enter into this Agreement and that I am entering into this Agreement voluntarily and with no coercion or pressure from the Lender, for the sole purpose of retaining the Property. I and the Lender acknowledge and agree that the Mortgage/Deed of Trust is an enforceable lien on the Property, that this Agreement shall not prejudice the lien in any way, and that the Lender's sole recourse is the enforcement of its lien on the Property and any action which may exist in relation to the Property itself.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

   A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents.

   B. The Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date, as set fourth in Section 3, has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 04/17/2020 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand

---

1 If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

that I have failed to make payments as required or if the modification of my loan is otherwise denied modification will not take effect. The first modified payment will be due on 04/17/2020.

A. The Maturity Date will be 03/17/2060.

B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, ("Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be $63,777.10 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C. $ 527.10 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the Interest Bearing Principal Balance and this amount is $63,250.00. Interest at the rate of 4.75% will begin to accrue on 03/17/2020 and the first new monthly payment will be due on 04/17/2020. My payment schedule for the modified Loan is as follows:

| Number of Monthly Payments | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On |
|---|---|---|---|---|---|---|
| 480 | 4.75% | 03/17/2020 | $294.59 | $157.55 May adjust periodically | $452.14 May adjust periodically | 04/17/2020 |

*The escrow payments may be adjusted periodically in accordance with applicable law; therefore, my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step, or simple interest rate.

I understand that if I have a pay option adjustable rate mortgage loan, upon modification the minimum monthly payment option, the interest-only, or any other payment options will no longer be offered. The monthly payments, as described in the above payment schedule for my modified Loan, will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default, the interest that will be due will be the rate set forth in Section 3.C.

F. I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

4. **Additional Agreements.** I understand and acknowledge that:

A. All persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased, (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the Divorce Decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents), or (iii) the Lender has waived this requirement in writing.

B. This Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C. I must comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. This Agreement constitutes notice that the Lender's waiver as to payment of escrow items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

E. All terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

F. As of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.



G. As of the Modification Effective Date, the Lender will allow the transfer of the Property, including the Garn St. Germain
Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A
buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted
herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

H. As of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed
for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

I. I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or
subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage
Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not
withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title
insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the
Modification Effective Date and the Agreement will be null and void.

J. I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of
this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this
Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided
to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I
elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force
and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home
Affordable Modification Program.

K. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws
of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases
where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the
mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to
exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take
any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

L. Lender will collect and record personal information, including, but not limited to, my name, address, telephone number,
social security number, credit score, income, payment history, government monitoring information, and information about
account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the
terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and
Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor,
insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable)
mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the
Second Lien Modification Program; and (v) any HUD certified housing counselor.

M. If any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the
true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's
request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the
Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents
the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents
within ten (10) days after I receive the Lender's written request for such replacement.

N. The mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result
in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may
change as a result of the New Principal Balance.

O. If my Loan Documents govern a home equity loan or line of credit, then I agree that as of the Modification Effective Date, I
am terminating my right to borrow new funds under my home equity loan or line of credit. This means that I cannot obtain
additional advances, and must make payments according to this Agreement. (Lender may have previously terminated or
suspended my right to obtain additional advances under my home equity loan or line of credit, and if so, I confirm and
acknowledge that no additional advances may be obtained.)

*Larry Fowler* _____ (Seal) 4/29/20 (Date)
LARRY D FOWLER

*Rhodie D. Fowler* _____ (Seal) 4/29/20 (Date)
RHODIE D FOWLER

Signed, acknowledged and delivered in the presence of:

Witness _____ (Seal)  Witness *Michael Fowler* _____ (Seal)

State of    PA _____

County of    Philadelphia _____

I certify that the following person(s) Larry Fowler and Rhodie Fowler personally appeared before me this 29 day of April , 20 20 , and [ ] I have personal knowledge of the identity of the principal(s), [ ] I have seen satisfactory evidence of the principal's identity, by a current state or federal identification evidence of the principal's identity photograph in the form of a Driver's License , or [ ] credible witness has sworn to the identity of the principal(s); each acknowledging to me that he or she voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated:

Witness my hand and official seal, this 29th day of April , 20 20

Notary Signature *Victoria Sipes* (Seal)

Witness _____ (Seal)

Typed/Printed Name: Victoria Sipes                    (Official Seal)
Notary Public, State of: PA _____
(VA Notaries) Reg. No.: _____
My Commission Expires: 7/25/2020 _____

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Victoria Sipes
Philadelphia City, Philadelphia County
My Commission Expires 07/25/2020

Space Below this Line for Corporate Acknowledgement

NewRez LLC D/B/A Shellpoint Mortgage Servicing as Attorney in Fact for NRZ Pass-Through Trust II

**Authorized Signer** (Lender) _Shelly Saunders_ (Seal)

**Printed Name/Title** _Shelby Saunders / Team Lead_

Signed, acknowledged and delivered in the presence of:

Witness _Alan N. Grover Jr._ (Seal)    Witness _Nneka Joyner_ (Seal)

State of _SC_

County of _Greenville_

I certify _Shelby Saunders_ personally appeared before me this _4th_ day of _May_, 20_20_ and acknowledged that he or she is an authorized signer for NewRez LLC D/B/A Shellpoint Mortgage Servicing as Attorney in Fact for NRZ Pass-Through Trust II. I have personal knowledge of the identity of said officer, acknowledging to me that he or she voluntarily signed the foregoing document on behalf of the corporation for the purposes stated therein and in the capacity indicated.

Witness my hand and official seal, this _4th_ day of _May_, 20_20_

**Notary Signature** _Tochivas Austin_ (Seal)

Witness _Alan N. Grover Jr._ (Seal)

Typed/Printed Name: _Tochivas Austin_

Notary Public, State of: _SC_

(VA Notaries) Reg. No.: _—_

My Commission Expires: _1-10-30_

(Official Seal)

TOCHIVAS R. AUSTIN
MY COMMISSION
EXPIRES
1/10/2030
NOTARY PUBLIC
SOUTH CAROLINA